UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GINA SIMON,

        Plaintiff,

    v.

BELLEVUE SCHOOL DISTRICT,

        Defendant.

Case No. C06-0708RSL

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for summary judgment (Dkt. #17) filed by defendant the Bellevue School District (the "District"). Plaintiff, a former school bus driver for the District, argues that the district harassed her and discriminated against her based on her disability in violation of the Americans with Disabilities Act of 1990. Plaintiff also alleges that the District violated a federal transportation regulation by requiring her to "stand down" from driving while it investigated whether it was safe for her to drive while using her medication. The District counters that plaintiff was discharged for repeated tardiness, in violation of its policy and its mission to pick up school children on time.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 1

1   For the reasons set forth below, the Court grants defendant's motion.

## II. DISCUSSION

**A.      Background Facts.**

Plaintiff worked for the District on two occasions, between 1997 and 2000, and between 2003 until her termination on June 20, 2006. Plaintiff drove a school bus for special needs children. Plaintiff argues, and the Court assumes for purposes of this motion, that she has attention deficit disorder ("ADD").

The District requires its bus drivers to clock-in by a certain time, and they are given a five-minute grace period. Typically, a bus driver has a "departure time" that is fifteen minutes after his or her clock-in time.[1] That procedure ensures that the driver has fifteen minutes to check in at the Transportation Department Office, walk to the bus parking area, perform a thorough pre-trip safety inspection of the bus, and depart the bus yard on time. The departure time is calculated to ensure that the drivers have sufficient time to pick up the children on time without speeding or otherwise violating traffic laws. Declaration of Sheila Herner, (Dkt. #18) ("Herner Decl.") at ¶ 6. Drivers must complete every pre-trip inspection by filling out an inspection form. The inspection includes, among other things, checking fluid levels, checking for window cracks and damage to the bus, ensuring 2-way radio operations and interior and exterior light operations, and defogging or deicing windows depending on the weather.

If a bus driver is late, the District must attempt to find a substitute, which is

---

[1] The fifteen-minute period is also mandated by the collective bargaining agreement in place between the union and the District. Declaration of Marshall Ferguson, (Dkt. #19) ("Ferguson Decl."), Ex. 2 ("The time used for the complete morning arrival, walk to bus, warm-up, complete pre-trip with mirror check is 13 to 15 minutes as timed on a morning that no extra window cleaning for fog or frost was required.").

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 2

difficult for early morning routes, or conscript an office staff member. Herner Decl. at ¶ 9. Another district employee must then cover that employee's duties while he or she is driving the bus. Finding an alternate driver could result in the bus departing late, which impacts students, parents, and teachers.

Around December 2003, plaintiff began to arrive late for work routinely. The District counseled her in person on several occasions for being tardy. In November 2004, plaintiff presented the District with a letter from a registered nurse noting that she had ADD and explaining that a reasonable accommodation would be to allow her to avoid discipline if she arrived after the five-minute grace period but in time to prepare her bus and was punctual to the bus stops on her route. Ferguson Decl., Ex. 6. The District subsequently required plaintiff to undergo an independent medical exam ("IME"), and the performing physician, Dr. Berryman Edwards, concluded that plaintiff's tardiness was "probably not related to ADD." Id., Ex. 7 at p. 3. Based on that finding and its assertion that arriving on time was an essential job function, the District rejected plaintiff's proposed accommodation. Id., Ex. 8. Dr. Edwards also noted that plaintiff was consuming high doses of amphetamine salts for her ADD. After following up with Dr. Edwards regarding plaintiff's medication, the District reassigned plaintiff from driving school buses to other work so that it could obtain an expert opinion about any possible risks related to her medication. Dr. Edwards noted that according to the package insert, amphetamines "may impair the ability of the patient to engage in potentially hazardous activities such as operating machinery or vehicles." Id., Ex. 10. Nevertheless, after obtaining a certification from plaintiff that she was not experiencing any hazardous side

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 3

1  effects from the medication, the District permitted her to return to driving buses.  Id.[2]

2  According to plaintiff's supervisor, her repeated tardiness and absences "wreaked
3  havoc on the Transportation Department."  Herner Decl. at ¶ 10.  The District was forced
4  to find substitutes for her or have other employees pre-trip her bus for her, all at the last
5  minute.  Id.  Plaintiff was given two letters of warning for tardiness in June 2005 and one
6  in October 2005.  Plaintiff was given a leave of absence due to stress in October 2005,
7  and she returned to work in January 2006.  The District met with plaintiff on January 20,
8  2006 and offered her an accommodation that would allow her to be tardy on one day per
9  month without penalty.  Ferguson Decl., Ex. 14.  However, plaintiff was tardy three times
10 in March 2006.  The District met with plaintiff again in March 2006 and offered her
11 another accommodation, a start time five minutes later for her mid-day assignment.

12 Despite the District's accommodations, plaintiff was late eleven times between
13 mid-February and April 2006.  Ferguson Decl., Ex. 15.  The District suspended plaintiff
14 for tardiness on two occasions in March and April 2006.  The District met with her and a
15 union representative on May 3, 2006.  During the meeting, plaintiff denied that arriving at
16 work on time was an essential job function.  The District's Board of Directors considered
17 plaintiff's case at a regularly scheduled meeting on June 20, 2006.  Plaintiff attended the
18 meeting and offered an oral statement.  The Board terminated her employment effective
19 June 20, 2006.

**B.     Summary Judgment Standard.**

On a motion for summary judgment, the Court must "view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine

---

[2] Plaintiff argues that defendant's motion did not include the certification, but it was filed with the motion.  Ferguson Decl., Ex. 10.

1  issues of material fact." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004). All
2  reasonable inferences supported by the evidence are to be drawn in favor of the
3  nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir.
4  2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving
5  party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec.
6  Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

**C.  Analysis.**

The ADA prohibits employers from discriminating against "a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). To prevail on her ADA claim, plaintiff must make a prima facie showing that (1) she is disabled within the meaning of the statute, (2) she is a qualified individual with a disability, and (3) she suffered an adverse employment action because of her disability. See, e.g., Hutton v. Elf Atochem N. Am., Inc., 273 F.3d 884, 891 (9th Cir. 2001). Even assuming that plaintiff is disabled, she has not shown that she was otherwise qualified to perform the essential functions of her position with or without reasonable accommodation. The District has shown that arriving to work on time is an essential job function for its school bus drivers. Its clock-in times and five-minute grace period guarantee a minimally safe period for the drivers to perform all pre-trip duties, especially the safety inspection without rushing, and to pick up all students on time without violating traffic laws or disrupting schedules. Herner Decl. at ¶ 13; Ferguson Decl., Exs. 20 & 21 (School Bus Drivers Manuals state, "Reporting tardy for work is considered substandard job performance"). As evidenced by the collective bargaining agreement, plaintiff's union concurs that the pre-trip period of time of 13 to 15 minutes is essential. Plaintiff has offered no evidence to undermine defendant's contention that arriving to work on time is an essential function. Although

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 5

1  she vaguely argues in her response that she showed up for work late between 1997 and
2  2000 and the District ignored it, she has offered no evidence or declarations to support
3  that assertion.[3]  Similarly, plaintiff argues that the pre-trip inspection was not an essential
4  function of her position but was instead a "function of maintenance." Plaintiff's
5  Response at p. 11. In support, she cites her supervisor's deposition testimony, in which
6  the supervisor stated that if a driver is tardy, "once in a while, [the District] could get the
7  bus pretripped by a mechanic or supervisor." Herner Dep. at p. 33. The fact that another
8  District employee could perform that safety function "once in a while" if necessary does
9  not show that it was not an essential job function.

10  Plaintiff was unable to perform an essential function of her job. She was
11  repeatedly tardy, and testified during her deposition that her ADD prevented her from
12  consistently arriving on time, even when she took her medication and worked afternoon
13  driving shifts. Plaintiff's Dep. at pp. 92-93.

14  Plaintiff must show that there was a reasonable accommodation that would have
15  allowed her to be punctual. Dark v. Curry County, 451 F.3d 1078, 1088 (9th Cir. 2006).
16  However, the accommodation that plaintiff believes the District should have granted was
17  patently unreasonable:

18  What I was asking for as an accommodation in the letter was – and they never
    seemed to get this – basically leave me alone. . . . The accommodation I asked for,
19  basically says, what we're trying to say, [the registered nurse] and I in the letter,
    leave me alone. As long as I'm arriving to my bus stops on time, never been late,
20  leave me alone.

21  Plaintiff's Dep. at pp. 142-43; id. at p. 159 (agreeing that the District should have "taken

22

23  ――――――――――――――――
    [3] Instead, she merely stated in her deposition that the District did not use sign in
24  sheets between 1997 to 2000. That evidence does not show that the District ignored
    tardiness.
25

26  ORDER GRANTING MOTION
    FOR SUMMARY JUDGMENT - 6

it on faith" that plaintiff would show up in enough time to complete the pre-trip inspection and depart on time).  Plaintiff conceded that the District needed to have a clock-in time.  Plaintiff's Dep. at p. 145.  She also conceded that the District had a right to require a thorough pre-trip inspection prior to every trip.  Id. at 178 (acknowledging that the inspection was a "safety thing").  Plaintiff, however, could not guarantee that she would be able to arrive every day by any specific time.  Id. at pp. 167-68.  Nor could she explain how letting her arrive at work whenever she could would allow her to sign in, walk to the bus, complete a thorough pre-trip inspection, and arrive at her stops on time without violating traffic laws.  Id. at 170-71.  Plaintiff's requested accommodation is not reasonable because an employer is not required to excuse the non-performance of an essential job function as an accommodation.  Dark, 451 F.3d at 1089; 29 C.F.R. § 1630.2(o)(1)(ii).  Accordingly, plaintiff's discrimination claim fails because she has not shown that she was able to perform the essential functions of her job with or without a reasonable accommodation.

Plaintiff also argues that the District failed to engage in the interactive process with her.  See, e.g., Humphreys v. Memorial Hospitals Ass'n, 239 F.3d 1128, 1137 (9th Cir. 2001 (explaining that an employer must engage in the interactive process once it becomes aware of the need for an accommodation).  Specifically, she alleges that the District never met with her to discuss an accommodation.  The record, however, shows that District met with her on January 20, 2006 and offered her an accommodation of being tardy one time per month without discipline.[4]  Ferguson Decl., Ex. 14.  The District

---

[4] Plaintiff also alleges that the District violated its own policy in failing to meet with her.  She attached what appears to be a presentation to her response, but she has not shown that it was the District's policy or when it was in effect.  In fact, none of the exhibits attached to plaintiff's motion is properly authenticated.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 7

met with plaintiff again on March 30, 2006 to discuss her recent tardiness for her mid-day shift.  The District proposed allowing her to be five minutes late for her mid-day shift.  Ferguson Decl., Ex. 15.  Although the District could have discharged plaintiff after she received three warning notes under the collective bargaining agreement, it proposed the accommodation and gave her additional opportunities to correct her behavior.  Id.  The District met with plaintiff again, with her union, on May 3, 2006, but plaintiff continued to deny that punctuality was an essential job function.  Id., Ex. 16.  The District also considered the accommodation plaintiff proposed, to allow her to be tardy without discipline, but appropriately concluded that it was not a reasonable accommodation.  Plaintiff has not shown that the District failed to engage in the interactive process.

Plaintiff further contends that the District harassed her by calling her four times in one day (twice on her cell phone and twice on her home phone) while she was home sick, and by sending a courier to her house to deliver employment-related correspondence.  Plaintiff's Dep. at pp. 186-88.  In one of the calls, a District employee called to notify her that the courier was at her house, and during another, an employee requested that she provide a doctor's note regarding her illness.  Plaintiff's Dep. at pp. 186, 196-95.  Plaintiff admits that none of the contacts was threatening, all were work-related, and she never asked the District to refrain from calling her at home.  Plaintiff also alleges that the District harassed her via its May 7, 2005 letter reassigning her from driving based on Dr. Edwards' assessment of the risks.  The letter, however, is not harassing, and the District's contacts with plaintiff fail to state a claim for disability related harassment.  Anderson Dep. at pp. 15-16 (explaining the reasons for the letter); Herner Dep. at pp. 29-30.  Nor did plaintiff provide any support for her assertion that the District's contacts were designed to increase her stress and force her to quit.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 8

1    Plaintiff also alleges that the District violated the law by sharing without her
2 permission her private medical information with Dr. Patricia Lipscomb, who performed a
3 second IME.  Plaintiff argues that the District violated RCW 70.02.030, but that statute
4 does not prohibit disclosure by an employer.
5    Finally, plaintiff alleges that the District unlawfully required her to "stand down"
6 from driving a school bus after learning of her amphetamine use.  The regulation that
7 plaintiff claims the District violated, 49 C.F.R. § 40.3, defines a "stand down" as:

> The practice of temporarily removing an employee from the performance of safety-sensitive functions based only on a report from a laboratory to the [Medical Review Officer] of a confirmed positive test for a drug or drug metabolite, an adulterated test, or a substituted test, before the MRO has completed verification of the test result.

11 The District, however, did not remove plaintiff from her bus driving duties because of a
12 positive Department of Transportation drug test.  Instead, the District learned directly
13 from plaintiff and her nurse that she was taking the medication.  Under the circumstances,
14 there was no need to confirm the results of any drug test.  Plaintiff alleges that the
15 District's decision to reassign her based on her use of medication was actually a pretext
16 for discrimination because she was reassigned months after the District learned of her
17 medication use.  Plaintiff's pretext analysis is misplaced because she has not met her
18 initial burden of showing that she was a qualified individual with a disability.
19 Regardless, the timing does not evidence pretext.  The note from plaintiff's registered
20 nurse only noted that she was receiving "medication advice" from the clinic.  Ferguson
21 Decl., Ex. 6. It did not set forth the specific type or its risks.  Plaintiff was reassigned
22 once Dr. Edwards explained the risks of driving while using the amphetamines as set
23 forth in the medication's own warnings.  Based on those potential risks, the District did
24 not discriminate against plaintiff by temporarily reassigning her.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 9

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's motion for summary judgment (Dkt. #17).  The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff.


DATED this 22nd day of June, 2007.



*MWS Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 10